UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

UNITED STATES OF AMERICA,  )
                           )
        Plaintiff,         )
                           )        Criminal No. 11-15-ART
v.                         )
                           )
                           )      **MEMORANDUM OPINION**
JAMES "CHUM" TACKETT,      )            **& ORDER**
                           )
        Defendant.         )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The government has charged James "Chum" Tackett with, among other things, the theft of thirty-four Economic Recovery Payments in violation of 18 U.S.C. § 641. Tackett has moved to dismiss this count of the indictment, claiming that the stolen property in question did not belong to the government, that the government has not shown he possessed the intent required to commit the crime, and that the indictment is duplicitous. The government opposed the motion. Count One of the indictment is duplicitous, so Tackett's motion to dismiss is granted.

## BACKGROUND

When deciding a motion to dismiss, a district court regards the indictment's factual claims as true. *See Costello v. United States*, 350 U.S. 359, 363 (1956). The indictment, R. 1, alleges the following facts:

James "Chum" Tackett was the administrator and chairman of Golden Years Rest Home (GYRH) in Jenkins, Kentucky. GYRH is a nonprofit corporation that operates a nursing home that cares for around forty disabled or elderly individuals.

The residents of GYRH receive a number of federally-funded benefits, including Supplemental Security Income, Social Security, coal-mine-workers' black-lung disability payments, Veterans Administration pensions, and railroad-worker retirement funds. GYRH residents who were incapable of managing their own financial affairs designated Tackett as the "representative payee" of their federal payments. As their representative, Tackett owed the residents a fiduciary duty to use these funds for their benefit alone. Tackett was therefore responsible for applying the federal funds sent to the residents of GYRH toward the cost of their care.

In May 2009, the United States mailed Economic Recovery Payments, or "stimulus checks," to the residents of GYRH. Each check was in the amount of $250. The government designated these checks for residents' individual use and prohibited GYRH from applying the checks to the cost of residents' care or any other purpose. Before the stimulus checks arrived, an ombudsman for GYRH residents, Argene Jones, visited GYRH and explained these restrictions. R. 17 at 2. Nevertheless, on May 11, May 19, May 20, and May 27, 2011, Tackett deposited the stimulus checks of thirty-four residents into the general account of GYRH. The residents did not endorse the checks. *Id.* Tackett later made "substantial" and "frequent" withdrawals from the GYRH general account for his own personal use. *Id.*

On May 26, 2011, a federal grand jury sitting in London, Kentucky, returned an indictment charging Tackett with nineteen violations of 18 U.S.C. § 641 between June 2006 and May 2009. Count One of the indictment alleged that Tackett "willfully and knowingly embezzled, stole, and converted to his own use or the use of another, money of the United States in excess of $1000, that is, approximately 34

2

Economic Recovery Payments made payable to residents of GYRH, all in violation of 18 U.S.C. § 641."  R. 1 at 3-4.

## DISCUSSION

Tackett's motion to dismiss, R. 13, raises three grounds for dismissing Count One of the indictment: (1) the count does not properly allege a violation of 18 U.S.C. § 641; (2) the government fails to show that he acted with the necessary intent to violate § 641; and (3) the count is duplicitous.  Arguably, success on one of the first two grounds could result in dismissal with prejudice, whereas success on the third ground, duplicity, would only result in a dismissal without prejudice.  It is therefore appropriate to begin with the first two grounds for dismissal.

### I.  Whether the Indictment Properly Alleges an Offense

Tackett argues Count One fails to allege an offense against him because the checks in question belonged to the residents of GYRH, not the government.  He claims that he "did not simply keep the checks when they were mailed by the Government but negotiated with the recipients and did certain acts in exchange for part of the proceeds of the checks, a different amount with regard to each check." R.13-1 at 6-7.

Contrary to Tackett's assertions, Count One of the indictment properly alleges a violation of § 641.  Under the Federal Rules of Criminal Procedure, an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), and an essential element of a § 641 violation is that the stolen money or property belonged to the government. *See United States v. Morris*, 541 F.2d 153, 154 (6th Cir. 1976).  Neither party

3

disputes that the stimulus checks were government property when they arrived at GYRH. Tackett argues that when GYRH residents were informed they had received the stimulus checks, the checks became the property of the residents. R. 18 at 4. This argument fails, however, "because the United States' underlying obligation to its payee is not discharged until the payee receives the funds," making "'[t]he delivery of a check . . . of limited functional significance'" for determining whether a check was government property. *United States v. Adams*, 39 Fed. App'x 52, 55 (6th Cir. 2002) (quoting *United States v. Forcellati*, 610 F.2d 25, 31 (1st Cir. 1979)). If Tackett offers evidence that, as he claims, "he negotiated with the recipients and did certain acts in exchange for part of the proceeds of the checks," R.13-1 at 6-7, he may be able to prove the checks were no longer government property. But a jury—not this Court—must decide the merits of such evidence.

**II. Whether the Indictment Alleges the Necessary Intent**

Tackett further claims that the government failed to show he acted with the intent necessary to violate § 641. *Id.* at 7. But like the question of whether the stolen property belonged to the government, so too must a jury decide whether a defendant acted with criminal intent. *See Morissette v. United States*, 342 U.S. 246, 274 (1952) ("Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury."). Count One of the indictment asserted that Tackett intended to steal government property, R. 1 at 3-4, and it is the jury's duty to consider the strength of that allegation.

### III. Duplicity of the Indictment

Tackett's final ground for dismissing Count One is that it is duplicitous. Separate offenses must be charged in separate counts of an indictment. Fed. R. Crim. P. 8(a). If an indictment "sets forth separate and distinct crimes in one count," it is duplicitous. *United States v. Cromer*, No. 09-5853, 2011 WL 3715110, at *3 (6th Cir. Aug. 25, 2011) (quoting *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002)). District courts must dismiss duplicitous indictments, lest the defendant be convicted without the jury reaching a unanimous verdict on the commission of any particular offense. *See United States v. Boyd*, 640 F.3d 657, 665-66 (6th Cir. 2011) (citing *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002)). The indictment in this case is duplicitous if Tackett's thirty-four actions were separate offenses rather than one continuing offense. *See United States v. Kelley*, 461 F.3d 817, 830 (6th Cir. 2006) ("'The yardstick in determining whether there is duplicity . . . is whether one offense or separate offenses are charged.'") (quoting 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 142 (3d ed. 1999)).

A crime is a continuing offense if the language of the statute says so, or if the nature of the crime is such that "Congress must assuredly have intended" it to be continuing. *Toussie v. United States*, 397 U.S. 112, 115 (1970). The text of § 641 makes it a federal crime to embezzle, steal, purloin, or knowingly convert any "thing of value of the United States." Nothing in the statute's language suggests it is a continuing offense, and the government does not argue that it is. Whether Congress intended for the theft of federal funds to be a continuing offense, however, is less clear.

The "hallmark" of a continuing offense is that it endures "beyond the initial illegal act, and that 'each day brings a renewed threat of the evil Congress sought to prevent' even after the elements necessary to establish the crime have occurred." *United States v. Yashar*, 166 F.3d 863, 875 (7th Cir. 1999) (quoting *Toussie*, 397 U.S. at 122). Conspiracy, escape from incarceration, kidnapping, and bigamy are all continuing offenses. *See Yashar*, 166 F.3d at 875; *United States v. Jones*, 533 F.2d 1387, 1390-91 (6th Cir. 1976). More recently, courts have found that possessing an unregistered firearm and failing to disclose information in order to obtain Social Security benefits are continuing offenses. *See United States v. Newman*, No. 96-1783, 1998 WL 30821, at *2 (6th Cir. Jan. 21, 1998); *United States v. Banks*, 708 F. Supp. 2d 622, 624-25 (E.D. Ky. 2010). The common thread of these crimes is that they create "a continuing threat to society," *United States v. Bailey*, 444 U.S. 394, 413 (1980), leading Congress to prohibit "a course of conduct, not an act." *Jones*, 533 F.2d at 1391; *see also Toussie*, 397 U.S. at 116 (indicating that the continuing offense doctrine "should be applied only in limited circumstances.").

The government alleged that Tackett carried out a "continuous scheme to permanently deprive the government of its money" in violation of § 641. R. 17 at 5. Under the first paragraph of that statute, "whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any . . . thing of value of the United States" is guilty of a crime. The statute's second paragraph penalizes "whoever receives, conceals, or retains the same with intent to convert it to his use or gain . . . knowing it to have been embezzled, stolen, purloined, or converted." Courts are divided on whether Congress intended for § 641 to be a continuing offense. The

Sixth Circuit has yet to speak on the issue, and the government points to some courts that have found a continuing offense, *see, e.g.*, *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979); *Unites States v. Trang Huydoan Phan*, 754 F. Supp. 2d 186, 190 (D. Mass. 2010), while Tackett points to others that have reached the opposite conclusion for § 641 and similar statutes, *see, e.g.*, *United States v. Duhamel*, No. 2:10-cr-203-GZS, 2011 WL 971531, at *2 (D. Me. Mar. 18, 2011); *United States v. Pease*, No. CR-07-757-PHX-DGC, 2008 WL 808683, at *2-3 (D. Ariz. Mar. 24, 2008).

Courts do not traditionally consider theft a continuing offense. A man who breaks into a bank vault five times in a month has committed five separate offenses, not a single continuing one. This is true even if the criminal planned out five thefts before departing for the bank the first time. *Cf. Yashar*, 166 F.3d at 877 (holding that separate offenses "may be part of a common scheme without being 'continuing'"). The offenses are separate because after the thief makes off with the money the first time, the "evil Congress sought to prevent," *Toussie*, 397 U.S. at 122, has ended. The "evil" may resume a few days later when the thief steals again, but it is a new evil, separate from the first.

Under some circumstances, however, theft or embezzlement can be a continuing offense. If the criminal formulated "a plan or scheme or [set] up a mechanism, which, when put into operation, [would] result in the taking or diversion of sums of money on a recurring basis," an indictment is permitted to aggregate a series of thefts under § 641 into one count. *United States v. Smith*, 373 F.3d 561, 564 (4th Cir. 2004) (quoting *United States v. Billingslea*, 603 F.2d 515, 520 (5th Cir.

7

1979)).  Once a criminal sets a recurring plan into effect, he need not take any new actions to continue to steal the government's money.  In *Smith*, for example, the Fourth Circuit found that the defendant committed a continuing offense under § 641 when he set up an automatic direct deposit of his deceased mother's Social Security check into his bank account.  373 F.3d at 564; *see also Trang Huydoan Phan*, 754 F. Supp. 2d at 190 (finding a continuing offense when the defendant set up direct deposit of Social Security checks belonging to a third party).  Just as in cases of conspiracy or kidnapping, the criminal who sets up a recurring plan to steal government money poses a "continuing threat to society" every day until the plan stops.  *Bailey*, 444 U.S. at 413.

On the other hand, when multiple thefts of government property require multiple acts, courts have found that § 641 is not a continuing offense.  *See, e.g.*, *United States v. Bundy*, Criminal No. 08-196-P-H, 2009 WL 902064, at *11 (D. Me. Mar. 31, 2009); *Pease*, 2008 WL 808683, at *2-3; *United States v. Beard*, 731 F. Supp. 285, 290-91 (S.D. Ind. 1989); *see also Billingslea*, 603 F.2d at 520 (finding that wrongful takings of government grant funds were separate offenses when "all that can be attributed to the accused is an original intent to purloin and evidence merely shows that this intent was acted on from time to time").  In these cases, each additional theft required a new affirmative act by the criminal.  Like the burglar breaking into the bank vault, the "evil" halted when the criminal finished his first theft of federal funds, then resumed when the criminal carried out his second theft.

According to the indictment, Tackett formulated a scheme to embezzle, steal, and convert the GYRH residents' stimulus checks.  The United States mailed the

thirty-four checks to the individual residents of GYRH in May 2009, and Tackett deposited them in the GYRH bank account in four transactions over a sixteen-day period. R. 17 at 4. Tackett may have had the same intention to steal each check, and he may have conceived a grand plan of theft in advance of the first mail delivery. But in order to embezzle, steal, and convert thirty-four different checks, he would have needed to perform more than one affirmative act. The indictment must therefore set out separate counts against Tackett, rather than one continuing offense.

Arguably, Tackett may have committed only four separate offenses rather than thirty-four. Because conversion is the wrongful assumption and exercise of control over another's property, *see Adkins v. Perry*, 115 Fed. App'x 605, 610 (6th Cir. 2004), the indictment could have asserted that Tackett converted the stimulus checks to his own use each time he deposited the checks into the GYRH account. Indeed, according to the United States, Tackett made four deposits of stimulus checks between May 11 and 27, 2009. R. 17 at 2-3. But the United States does not allege four conversions; it alleges one.

Alternately, a single count under § 641 might have been appropriate if the government had charged Tackett with *retaining* stolen federal funds. The first paragraph of § 641 criminalizes the theft of federal funds, but the second criminalizes the knowing retention of stolen federal money. The crime of retaining stolen funds necessarily continues until the criminal's possession ends, so Congress must have intended retention to be treated as a continuing offense. *See United States v. Blizzard*, 27 F. 3d 100, 101 (4th Cir. 1994); *see also United States v. Rivlin*, No. 07-Cr.-524(SHS), 2007 WL 4276712, at *4 (S.D.N.Y. Dec. 5, 2007) ("It is the retaining of

stolen government property—a crime of possession—that can render a violation of § 641 a continuing offense.").  Yet the government did not charge Tackett with retaining stolen federal funds.  Count One of the indictment alleges only that Tackett "willfully and knowingly embezzled, stole, and converted" money of the United States.  R. 1 at 3-4.  It makes no mention of retention.

The government also argues that it is "permitted to aggregate offenses involving discrete sums of money . . . where a series of unlawful acts were part of a single continuing scheme."  *United States v. Wilson*, No. 95-Cr.-668(LMM), 1997 WL 10035, at *3 (W.D.N.Y. Jan. 10, 1997) (citing *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979).  True enough, but *Wilson* was a prosecution of criminal RICO violations.  RICO is a continuing offense under the *Toussie* standard because its statute criminalizes patterns of activity that can include predicate acts separated in time by as many as ten years.  *See* 18 U.S.C. § 1961(5).  So Congress must have intended for RICO offenses to be continuing, but the same cannot be said for all thefts of federal funds.

Lastly, the government claims that the text of § 641 allows an indictment to aggregate the total of the thirty-four stimulus checks.  This is only a correct assertion insofar as a court may combine multiple counts of § 641 to determine the defendant's sentence.  The statute provides that if the value of the stolen property "in the aggregate, combining all counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both."  If the combined value of all counts exceeds $1000, a

court can imprison the defendant for up to ten years.  The statute does not allow an indictment to aggregate multiple offenses into one count.

## CONCLUSION

The offense charged in Count One is not a continuing offense, so the count is duplicitous.  Accordingly, the defendant's motion to dismiss, R. 13, is **GRANTED.** Count One of the indictment is **DISMISSED WITHOUT PREJUDICE.**

This the 8th day of September, 2011.

Signed By:

_Amul R. Thapar_   AT

United States District Judge